IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-CR-536-L-(11)** |
| | § | |
| **MARTIN SALVADOR RODRIGUEZ,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant Martin Salvador Rodriguez's Notice of Appeal to District Court and Objection to Detention Order, Brief in Support, and Request for Hearing (Doc. 630), filed April 9, 2021. After consideration of the Detention Order, Defendant's appeal, Government's response, and applicable authority, the court **grants** and **sustains** Defendant Martin Salvador Rodriguez's Notice of Appeal to District Court and Objection to Detention Order (Doc. 630); **vacates** the Detention Order (Doc. 627); and **imposes** additional conditions of supervised release against Defendant Martin Salvador Rodriguez.

## I.      Factual and Procedural Background

On December 5, 2017, Defendant Martin Salvador Rodriguez ("Defendant" or "Mr. Rodriguez") was charged by Superseding Indictment with 17 counts that include: managing a drug premise (Counts1-8, 10, 14-19); conspiracy to manage a drug premise (Count 20); and conspiracy to possess with intent to distribute a controlled substance (Count 25). Since his voluntary surrender and initial appearance on December 7, 2017, Mr. Rodriguez has been on pretrial release pending trial, pursuant to the conditions set by United States Magistrate Judge Irma C. Ramirez on the same

**Memorandum Opinion and Order – Page 1**

day, including the condition that he not violate any federal, state or local law while on release. Doc. 150.

On December 14, 2020, Defendant was arrested for an alleged misdemeanor violation of the Texas Mass Gatherings Act (the "Act") for promoting a mass gathering without a permit. The gathering occurred on December 5, 2020.  Upon receiving notice of Mr. Rodriguez's arrest from his U.S. Probation Officer in the Amended Report of Violation of Conditions of Pretrial Release (Doc. 619), the magistrate judge issued a summons ordering Mr. Rodriguez to appear before the court to determine whether his conditions of pretrial release should be revoked. On April 2, 2021, the magistrate judge held a hearing and, by written order on April 5, 2021 (Doc. 627), revoked Defendant's conditions of release. She stayed the order for seven days to allow Mr. Rodriguez to appeal to the undersigned. Defendant timely appealed to the district court.

Mr. Rodriguez contends that the magistrate judge's decision was based on an inapplicable rebuttable presumption that applies to a defendant on pretrial release who commits a felony or serious crime. Under 18 U.S.C. § 3148(b), "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local *felony*, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."  *Id*. (emphasis added). Mr. Rodriguez contends that, according to the plain text of the statute, a violation of the Act is not a felony, and that the magistrate judge made no finding that a violation of the Texas Mass Gatherings Act is a serious crime. He also asserts that the magistrate judge erroneously stated, both at the hearing and in her detention order, that a rebuttable presumption is created based on a finding of probable cause that any Federal, state, or local crime was committed. In light of the magistrate judge's alleged erroneous application of the rebuttable presumption, Mr. Rodriguez requests the court to

**Memorandum Opinion and Order – Page 2**

reconsider the revocation, and order that his conditions of release not be revoked. He contends that he is not a flight risk because he has successfully reported to pretrial services for more than three years notwithstanding the arrest at issue, and it is likely that he will comply with whatever additional conditions the court imposes. He also contends that he is not a danger to the community.

The Government concedes that the offense committed was a misdemeanor, but it argues that the court should deny Defendant's motion because the magistrate judge's determination was not based solely on the rebuttable presumption. The Government argues that the magistrate judge found that Defendant poses a significant danger to the community based on significant evidence produced at the hearing that included testimony from witnesses and information contained in several exhibits. According to the magistrate judge, the evidence demonstrated that, at the height of the COVID-19 Pandemic, Mr. Rodriguez organized and promoted a large-scale music event without a permit and failed to hire sufficient security or take other safety measures. Several fights occurred at the event, and six individuals were shot. The Government maintains that, "even after his arrest, Defendant continued to plan and promote such events, even scheduling one for the very week of this revocation hearing, again without a permit." Govt.'s Resp., Doc. 631 at 9. In her order denying the Government's Motion to Reconsider Stay Pending Appeal (Doc. 628), the magistrate judge determined that the allegations in the Government's motion were insufficient to show a violation of Defendant's conditions of release. Doc. 635 at 3. The court agrees and does not consider any other alleged event or incident after the date of Defendant's arrest. The court's decision is based on the facts and circumstances that occurred on December 5, 2020, and the ensuing investigation.

**Memorandum Opinion and Order – Page 3**

## II.     Standard of Review

### A.     Revocation of Pretrial Release and Detention

A district court reviews a pretrial detention order *de novo* and makes an independent determination of the pretrial detention or the proper conditions for release. *United States v. Karriem*, 2006 WL 1489484 at *2 (N.D. Tex. May 18, 2006) (citing *United States v. Fortna*, 769 F.2d 242, 249 (5th Cir. 1985)). Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." This review does not mandate a new evidentiary hearing, and the court may rely on the evidence introduced before the magistrate judge. *Id.* (citing *United States v. Baker,* 703 F. Supp. 34, 36 (N.D.Tex.1989)).

Pursuant to 18 U.S.C. § 3148(b), when a person violates a release condition, a judicial officer may revoke pretrial release when, after a hearing, the officer:

> (1) finds that there is—
>    (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>    (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>    (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>    (B) the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance

Memorandum Opinion and Order – Page 4

with the provisions of section 3142 of this title and may amend the conditions of
release accordingly.

18 U.S.C. § 3148(b).

In addressing whether probable cause exists to believe that a crime has been committed,

the court is first guided by the language of the Fourth Amendment to the U.S. Constitution, which

provides:

> The right of the people to be secure in their persons, houses, papers, and effects,
> against unreasonable searches and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and the persons or things to be
> seized.

U.S. Const. amend. IV.

Probable cause to justify an arrest means "facts and circumstances within the officer's

knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in

believing, in the circumstances shown, that [one] has committed, is committing, or is about to

commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). When

determining whether a reasonable person would have believed that an offense occurred, a court

considers the expertise and experience of law enforcement officials. *United States v. Garcia*, 179

F.3d 265, 268 (5th Cir. 1999) (citing *United States v. Ortiz*, 442 U.S. 891, 897 (1975)). "Probable

cause 'does not demand any showing that [the belief that an offense was committed] be correct or

more likely true than false.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting

*Texas v. Brown*, 460 U.S. 730, 742 (1983)). In determining whether probable cause exists, a court

is required to find a basis for an officer to believe to a "fair probability" that an offense occurred.

*Id.* (citing *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)) (citations omitted). A

"fair probability" does not mean that a reasonable person would have believed it more likely than

not, which is a preponderance of the evidence standard, that an offense occurred. *Garcia*, 179 F.3d

at 269; *Antone*, 753 F.2d at 1304. It means "something more than a bare suspicion, but need not reach the fifty percent mark." *Garcia*, 179 F.3d at 269; *see also United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001).

"[T]o satisfy the probable cause requirement of § 3148(b)(1)(A), the facts available to the judicial officer must warrant a [person] of reasonable caution in the belief that the defendant has committed a crime while on bail." *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990) (citation and quotation marks omitted). In determining whether there is probable cause, the court looks to the totality of the circumstances and the inferences that flow from such circumstances. *United States v. Petty*, 601 F.2d 883, 890 (5th Cir. 1979). This is crucial in determining the existence of probable cause.

### B. The Act

This Act provides as follows:

> (1) "Mass gathering" means a gathering:
> > (A) that is held outside the limits of a municipality;
> > (B) that attracts or is expected to attract:
> > > (i) more than 2,500 persons; or
> > > (ii) more than 500 persons, if 51 percent or more of those persons may reasonably be expected to be younger than 21 years of age and it is planned or may reasonably be expected that alcoholic beverages will be sold, served, or consumed at or around the gathering; and
> > (C) at which the persons will remain:
> > > (i) for more than five continuous hours; or
> > > (ii) for any amount of time during the period beginning at 10 p.m. and ending at 4 a.m.
> (2) "Person" means an individual, group of individuals, firm, corporation, partnership, or association.
> (3) "Promote" includes organize, manage, finance, or hold.
> (4) "Promoter" means a person who promotes a mass gathering.

Tex. Health & Safety Code Ann. § 751.002 (West 2017). "A person may not promote a mass gathering without a permit issued under this chapter." *Id.* § 751.003. A person commits a criminal

offense if he violates the permit requirement. *Id.* § 751.011(a). The criminal penalty for this offense is "a misdemeanor punishable by a fine of not more than $1,000, confinement in the county jail for not more than 90 days, or both." *Id.* § 751.011(b).

## III.    Analysis

After reviewing the record and applicable authority, the court determines that the magistrate judge should not have revoked Mr. Rodriguez's order of pretrial release pursuant to 18 U.S.C. § 3148. The parties agree that a violation under the Act is a state misdemeanor. The magistrate judge, therefore, incorrectly applied the rebuttable presumption provision. She did not find that a Federal, State, or local felony was committed by Defendant. Since the magistrate judge did not make this finding, the rebuttable presumption section of the statute does not apply, and the provisions of § 3148(b)(1) and (2) should have been considered.

Considering the totality of the circumstances, however, there is sufficient evidence to believe that probable cause existed to establish that Defendant violated the Act.  That Mr. Rodriguez promoted a gathering without a permit held at a rodeo arena in Johnson County, Texas, outside the limits of a municipality, lasting more than five continuous hours is not in dispute.  Also, testimony shows that Mr. Rodriguez was present at the event.  The sole issue for the court to decide is whether there was probable cause to believe that the gathering attracted or was expected to attract more than 2,500 persons.

In addition to reviewing the transcript and exhibits at the hearing held by the magistrate judge, the court requested and received a copy of Detective Barron's Affidavit for Arrest Warrant ("Affidavit").[1]  The court's coordinator was able to obtain the document, which it designates as Court Exhibit 1 and is **hereby** filed as part of the record.  The issue the court has to decide is

---

[1] From what the court can ascertain, this document does not appear to have been presented at the hearing.  As the court relied on this document, it **directs** the clerk of court to file it **under seal** as Court Exhibit 1.

**Memorandum Opinion and Order – Page 7**

whether probable cause existed to believe that a reasonably prudent law enforcement officer could

have believed that the gathering attracted or was expected to attract more than 2,500 persons. To

make this determination, the court first has to consider what was presented to the Justice of the

Peace by way of the affidavit of Detective Barron. The court also has to consider what was

presented at the hearing before the magistrate judge to determine whether there were additional

facts adduced to show that a reasonable law enforcement officer could have believed that the event

or gathering attracted or was expected to attract 2,500 persons.

At the detention hearing, the magistrate judge heard testimony from Johnson County

Sheriff's Department Detective Matthew Barron ("Detective Barron"), the lead detective on the

scene, who responded to a report of gunshots shortly before midnight on December 5, 2020, at the

event promoted by Defendant's business. Detective Barron determined that the number of persons

present at the event or gathering exceeded 2,500. On direct examination, inquiry was made

regarding how Detective Barron made this determination.  A portion of his testimony was as

follows:[2]

> Government: Okay. Did you direct certain officers to go ahead and log vehicles that
> were leaving the premises?
> Detective Barron: Yes.
> Government: And how did they do that, if you know?
> Detective Barron: So, as the event was closed down, the scene was secured, there's
> only one entrance, so that gate was closed. And once the scene was secured and the
> victims were evacuated, we were able to release the remaining vehicles. So, as the
> vehicles were released, there was a deputy calling out the license plates of each
> vehicle and then a deputy recording each, and they were also photographed on
> bodycam.
> Government: All right. How many cars were logged leaving that premises by
> officers once they arrived?
> Detective Barron: 739.

---

[2] In setting forth this testimony, the court uses the terms "Government" and "Defendant" to indicate which party's
attorney is questioning the witness.

**Memorandum Opinion and Order – Page 8**

> Government: Now, based on your observations, as well as what you talked to other officers, were these cars typically driven by one person or typically only contained one person, or did they have a driver and multiple passengers?
> Detective Barron: It varied, but we averaged it about four people per vehicle.

Hr'g Tr. 15:6-16.  Additionally, in response to the Government's question as to whether officers were able to "actually specifically count numbers of people that were leaving," Detective Barron responded, "No." *Id.* at 16:18-20. Based on these observations, his final estimation, based on a number of factors, was that "about 3,400 people" attended the event. *Id.* at 19:11.

> On cross-examination, his testimony was as follows:

> Defendant: All right. Now, again, you were getting a number of reports of—from your other officers' works to not only get control of the scene but to make these estimates that you've talked about. And I want to just go through a couple of them a minute, if I can.
> Detective Barron: Yes, sir.
> Defendant: You had some reports made that indicated by Deputy Teller that the gathering was probably 1,500 people. Do you remember him giving that estimate?
> Detective Barron: Yes.
> Defendant: Okay. And then the investigator, I think the same investigator, but unnamed, also identified that, on the dance floor, that's about a thousand people dancing, or could—could dance on that dance floor. Does that sound correct, sound accurate?
> Detective Barron: To his statements, yes.
> Defendant: To his statement. Right. And that there were another hundred vehicles left at the scene prior to the venue being [locked] down?
> Detective Barron: Yes.
> Defendant: But you don't really know how many people were in there? There's no report of how many there were, correct?
> Detective Barron: Correct.
> Defendant: And, again, the numbers that these individuals are giving to you, it says in the report, these are my approximate vehicle and approximate numbers. And in a couple of places, says my best guess. And, again, I'm not being critical. I'm saying my best guess. Because you really didn't make actual counts of anything, really, other than the car itself and the identification of the license plate, correct?
> Detective Barron: Correct.
>
> . . . .
>
> Defendant: [ . . . ]Would you agree with me, Investigator Barron, that if there were 739 vehicles that were documented, and I'm—take their—and there's two people in the car, that would be 1,400 people. Right?

**Memorandum Opinion and Order – Page 9**

Detective Barron: I would agree with you on that, yes.

Defendant: Okay. And you're saying and suggesting that there were more, or at least there was periodic reports that every once in a while—or, that's not fair; I want to be fair—looking into cars at various times, there would be more than two, and it's up to as many as four. So that would be a multiple number that could be there. Correct?

Detective Barron: Correct.

Defendant: Okay. But the—and so when you got these things together and you were making your report, you did not individualize your calculation and not get all the number of people and all the number of cars and try to divide it up? It was just your efforts and your other agencies' efforts, officers' efforts, to make a guess as to how many people were in attendance at that particular time, correct?

Detective Barron: Correct.

. . . .

Defendant: One other one I missed. I just want to go back so the Court will have the full benefit of it. In your report, you reference—refer to a report by Doctor—by Detective or Sergeant Smith, where he indicates that at least 2,000 were there or more at the venue. Is that correct?

Detective Barron: Correct.

Defendant: Going and showing an estimate. But, again, 2,000 isn't the trigger point for an implication of being a mass gathering event, correct?

Detective Barron: Correct.

*Id.* at 37:4-38:9; 44:12-45:6; 47:15-24.

In an attempt to trivialize Detective Barron's methodology for estimating the number of persons who attended or were expected to attend the event, Defendant asserts that Detective Barron's estimate was based on a "guess" or "best guess." For example, Defendant attacks the four-person-average number per vehicle that was used by Detective Barron, and suggests that, if the average were only two persons per car, the number would be "1,400" persons. What Defendant fails to acknowledge is that an average of four persons per car would necessarily mean that a substantial number of vehicles had more than four persons per vehicle. Defendant does not acknowledge this reality. The court notes that two deputies were observing all 739 cars at the entrance/exit as they left the premises, and these officers were in the best position to observe the

**Memorandum Opinion and Order – Page 10**

occupants of each car and approximate the number of persons in each vehicle. Taking a conservative number of three persons per vehicle yields a number of 2,217 (739 x 3) persons.

Defendant also attempts to characterize Detective Barron's estimate of the number of persons who attended as a "best guess." As acknowledged by defense counsel, the term "best guess" was a term used by him, not Detective Barron. The court finds the mischaracterization of Detective Barron's testimony unavailing. Also, in that exchange, the term "approximate number" was used, which means that the numbers were not exact but close to the actual number.

The evidence also shows that about 100 cars fled the scene prior to it being locked down. Using the same average of three persons per car, this comes to approximately 300 persons. The evidence further shows that approximately 100 persons left the facility on foot and were given a ride by some other person or a ride share service.

The figures in the three preceding paragraphs certainly indicate that the gathering attracted or was expected to attract more than 2,500 persons. In any event, in determining whether probable cause exists, one does not throw common sense and reason aside. In this regard, it would be fatuous for this court to assume or infer that no persons voluntarily left the facility prior to the time of the fights and shootings that occurred. While the court cannot place a number on the persons that left, some persons did leave. Not all persons who come to a gathering of this size arrive on time, and not all stay to the end, especially when the event lasts ten or eleven hours as in this case. Finally, there were three Greyhound buses at the facility, and the persons on the buses were not counted, although they should have been.

Based on the totality of the facts and circumstances, as well as reasonable inference drawn, the court has no pause in concluding that the gathering on December 5, 2020, attracted or was expected to attract more than 2,500 persons, and the court concludes that probable cause existed

**Memorandum Opinion and Order – Page 11**

for the Justice of Peace to issue the warrant for Mr. Rodriguez's arrest, and further evidence as herein explained, existed for the magistrate judge to find that probable cause existed to believe that Mr. Rodriguez had violated the Act.

The real thrust of Defendant's argument is that he is not guilty of violating the Act.  We are not there yet, as the state case is pending; and it will be decided by proof beyond a reasonable doubt, which is the highest legal standard and a much higher standard than probable cause. Probable cause, as the court has already stated, is a lower standard than proof by a preponderance of the evidence, which would mean that something is more likely true than not.  Probable cause does not mean that the belief that an offense was committed must "be correct or more likely true than false."  *Piazzo*, 217 F.3d at 245-46 (quoting *Brown*, 460 U.S. at 742).  Simply put, probable cause does not require exactitude.  If it did, there would be no need for a trial of an accused person.

Defendant also argues that no probable cause existed to show that the event attracted more than 2,500 persons or that it was expected to attract more than 2,500 persons.  At the hearing, Defendant presented the testimony of two witnesses—Ms. Veronica Mata, in charge of ticket counting at the entrance, and Mr. Vincent Torres, a ticket collector and road manager for one of the bands performing at the venue—who were present at the event all day for the purpose of providing information regarding ticket sales and paid admission to the event. Ms. Mata testified that 1,525 total tickets were sold. Hr'g Tr. at 75:20-22. Mr. Torres testified that 1,528 tickets were sold. *Id.* at 92:23-93:1. These witnesses testified that each ticket represented one person. They also testified that 2,500 people did not and could not have entered the venue.

With respect to the testimony of these two witnesses, the court notes that they were paid for their services by Mr. Rodriguez and, therefore, have a vested interest in the outcome of the court's decision in this matter.  Their testimony is favorable to Mr. Rodriguez and was supportive

of him.  No reasonable person would harbor the belief that these two persons would continue to be hired by or work for Defendant if they testified in a manner that was not favorable to him. Second, the court has serious concerns about exhibits to which they testified that 2,500 people did not attend the event.  The exhibits were mostly handwritten with no dates or anything else to indicate that they were business records or made at or near the time of the matters they purportedly address.  For these reasons, the court accords less weight to the testimony of Ms. Mata and Mr. Torres.  Finally, with respect to the number of tickets sold for the event, Ticketron, the company selling the tickets for the event, refused to tell Detective Barron how many tickets had been sold for the event.  The court can think of no reason why Ticketron would refuse to provide Detective Barron with the number of tickets sold for the event if the numbers would have shown that the event did not attract or was not expected to attract more than 2,500 people.

The finding of probable cause, however, is not the end of the story. After such a finding, detention can only be ordered if, based on the four factors set out in Section 3148(g), the judicial officer finds that no condition or combination of conditions of release will assure that Defendant will not flee or pose a danger to the safety of another other person or the community. Neither of the parties argued that Defendant was a flight risk, and the magistrate judge made no finding that he was a flight risk, and this issue plays no part in whether Defendant should have been detained. The magistrate judge, instead, determined that Defendant would pose a danger to the community if released.

The four factors under Section 3148(g) factors are: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history

Memorandum Opinion and Order – Page 13

and characteristics of a person; and (4) the nature and seriousness of the danger to any person or

the community that would be posed by the person's release.

> In summary, the magistrate judge stated:

> Defendant organized and promoted at least one gathering of more than 1,500 people at which alcohol would be present, with only 5 or 6 security guards and no screening for weapons, and multiple people were shot and injured at that event. The event (as well as other events organized and promoted by Defendant) was held in middle of a global pandemic despite statewide restrictions on gatherings with no precautions, such as mask requirements and social distancing, to protect public health and safety.

Detention Order 3-4 (Doc. 627). She failed to make the determination that no condition or

combination of conditions of release would assure that Defendant would not pose a danger to the

safety of any other person or the community, as required by the statute. There is not enough

information in the record to show that the magistrate judge considered each of the required Section

3148(g) factors in making her determination that Defendant should be detained. The court, thus,

finds that the magistrate judge did not make the necessary statutory findings in reaching her

ultimate decision to revoke Mr. Rodriguez's pretrial release.  The magistrate judge stated, "the

[c]ourt cannot conclude that Defendant will not pose a danger to the community." (Doc. 627).

The statement is not an affirmative finding; it is stated in the negative.  No discussion, however,

of any conditions or combination of conditions was considered or included by the magistrate judge.

As the requisite findings were not made, the magistrate judge's order of detention must be vacated.

The Bail Reform Act "clearly favors nondetention."  *United States v. Byrd*, 969 F.2d. 106, 109

(5th Cir. 1992).

There are conditions that would reasonably assure that Defendant Rodriguez is not a danger

to the safety of another person or the community.  The Act speaks of 2,500 persons, but the fights

and shootings that occurred on December 5, 2020, could have occurred at any gathering that did

not attract or was not expected to attract more than 2,500 persons, and smaller gatherings are not

**Memorandum Opinion and Order – Page 14**

covered by the Act, yet, criminal conduct certainly could occur that would pose a danger to another person or the community at much smaller gatherings than what is set forth in the Act. Additional conditions should be imposed and added to the terms of Mr. Rodriguez's pretrial release that address and close these loopholes to reasonably assure the safety of any other person and the community.

**The additional conditions imposed by the court are:**

**(1)  Defendant Rodriguez must ensure that sufficient certified Texas peace officers are present and armed to police any event or gathering open to the public that he promotes, sponsors, or organizes—directly or indirectly through any person acting on his behalf—at which alcohol will be served or consumed.  Such peace officers must be attired in the official uniform of the agency, city, county, town, or other public entity of which the peace officer is an employee;**

**(2)  Defendant Rodriguez must ensure that no armed person attends or enters the event or gathering, unless such person is a certified police officer or other law enforcement officer at the event or gathering on official business;**

**(3)  Defendant Rodriguez must put steps in place to ensure that all persons attending the event or gathering are screened for weapons, except certified Texas peace officers or any law enforcement officer who may be present at such event or gathering on official business. This requirement applies to all persons who leave and later return to the event or gathering;**

**(4)   Defendant Rodriguez must have conspicuous signs posted at the event or gathering warning persons attending that no firearms or other weapons are allowed;**

**(5) Defendant Rodriguez must meet with his probation officer well in advance of any planned event or gathering, as described herein, to ensure that such planned event or**

**Memorandum Opinion and Order – Page 15**

gathering complies with these additional conditions of release imposed against him by the court; and

(6)  **Defendant Rodriguez must report to his probation officer as directed so that he can sign and accept these additional conditions imposed against him.  He has represented to the court that he will abide by any additional conditions imposed by the court, and the court expects Defendant Rodriguez to honor fully such representation.**

## IV.    Conclusion

Accordingly, for the reasons set forth herein, the court **vacates** the Order of Detention (Doc 627) issued on April 5, 2021; **reimposes** the conditions of release set forth in Document 150; and **adds** the additional conditions as previously set forth in the preceding paragraph as part of Defendant Rodriguez's conditions of release pending trial.

**It is so ordered** this 10th day of September, 2021.


Sam A. Lindsay
United States District Judge